UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **IVAN MENDELSON, as guardian of the person and property of Joan Mendelson, an incapacitated person,**<br><br>      **Plaintiff,**<br><br>   v.<br><br>**P.O. JOEL REYES, *et al.*,**<br><br>      **Defendants.** | Civ. No. 2:16-cv-04831 (WJM)<br><br>**OPINION** |

**<u>WILLIAM J. MARTINI, U.S.D.J.</u>:**

     Plaintiff Ivan Mendelson, as guardian of Joan Mendelson, filed this 42 U.S.C. § 1983 action against two individual Newark police officers, Joel Reyes and Ricardo Feliciano, and the City of Newark (collectively, "Defendants"). All three Defendants now move, in separate motions, to dismiss the First Amended Complaint's ("FAC") Counts against them, pursuant to Federal Rule of Civil Procedure 12(b)(6). There was no oral argument. Fed. R. Civ. P. 78(b). For the reasons set forth below, the Officers' motion to dismiss is **GRANTED in part and DENIED in part**, insofar as Counts One and Four of the FAC are **DISMISSED** as to the Officers, but Count Three may proceed. The City's motion is **GRANTED** and Plaintiff's FAC is **DISMISSED** as to the City.

    **I.**      **BACKGROUND**

     The following facts are alleged in the FAC and taken as true for purposes of the pending motion. ECF No. 15 (FAC).[1]

     In August 2015, Officer Reyes, while on duty in a marked police car, observed a Nissan Sentra drive past him without slowing down for a nearby speed bump. FAC ¶¶ 12-14. Officer Reyes followed the vehicle without activating his lights and sirens to identify the vehicle's license plate number. *Id*. ¶ 14. When Officer Reyes entered the vehicle's license plate into his mobile computer, it registered a "hit," indicating that a

---

[1] Although this action was technically brought by Ivan Mendelson on behalf of Joan Mendelson, for ease of description, the Court will simply refer to Joan Mendelson as "Plaintiff" throughout this Opinion.

stop notice was in effect for the vehicle. *Id*. ¶ 15. Officer Reyes then activated his lights and sirens in an effort to initiate a car stop. *Id*. The driver of the Nissan Sentra, later identified as Nathaniel Young, sped away. *Id*. ¶ 16.

Officer Reyes attempted to contact radio dispatch to ascertain the reason for the stop notice and to notify them that Young was fleeing but, due to radio traffic, could not reach the dispatchers. *Id*. ¶ 17. Officer Reyes pursued Young at a high rate of speed for nearly a mile. *Id*. ¶ 18. Officer Feliciano, also operating a marked police car, joined Officer Reyes in the pursuit. *Id*.

Eventually, Young collided with an oncoming civilian vehicle, forcing the vehicle onto the sidewalk. *Id*. ¶ 19. Young exited his vehicle and fled on foot, but was soon apprehended by the police. *Id*. ¶ 20. Upon returning to their vehicles with Young, the Officers discovered that Plaintiff Joan Mendelson, a pedestrian, had been struck by Young's vehicle during the course of the police pursuit. *Id*. ¶ 21.

As a result of the crash, Joan Mendelson suffered traumatic brain injury, severe bodily injuries, and requires full-time nursing care. *Id*. ¶¶ 21-23.

In her FAC, Plaintiff alleges that the Officers' actions were taken in violation of the Attorney General Guidelines for Vehicular Pursuits ("the AG Guidelines"). *Id*. ¶¶ 24-30. Attached to Plaintiff's FAC is a copy of the AG Guidelines, which states that:

> [A]n officer may only pursue a vehicle when the officer reasonably believes that the violator has committed an offense of the first or second degree or a select enumerated offense or when a police officer reasonably believes that the violator poses an immediate threat to the safety of the public or other police officers.

*Id*. ¶¶ 24-25; Ex. 2. Pursuant to those Guidelines, even if an officer "reasonably believes that a violator has committed the requisite offense and/or poses an immediate threat to public safety, an officer must consider the degree of risk created by the pursuant before determining whether to undertake that pursuit." *Id*. ¶ 26.

Plaintiff raises the following Counts in her FAC: (1) Defendants Reyes and Feliciano (together, "the Officers") violated her Fourteenth Amendment due process rights (Count One); (2) the City failed to properly train, or have a proper policy regarding training of, police officers and police dispatchers (Count Two); (3) the Officers' willful conduct renders them liable under the New Jersey Tort Claims Act ("NJ TCA") (Count Three); and (4) all of the Defendants' negligent conduct renders them liable under the NJ TCA (Count Four). *Id*. ¶¶ 39-74.

Each Defendant now moves to dismiss the FAC. ECF Nos. 8, 35, 40.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, in whole or in part, if the plaintiff fails to state a claim upon which relief can be granted. The moving party bears the burden of showing that no claim has been stated. *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005). When considering a 12(b)(6) motion, the Court must accept as true all allegations in the complaint, and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff. *See Evancho v. Fisher*, 423 F.3d 347, 350 (3d Cir. 2005).

## III. DISCUSSION

### A. Claims Against the Officers

#### i. Count One (Due Process Violation)

Plaintiff alleges that the Officers violated her Fourteenth Amendment due process rights by causing her injury during the course of the police chase. This claim must be dismissed.

In *County of Sacramento v. Lewis*, the Supreme Court held that "high-speed chases with no intent to harm suspects physically or to worsen their legal plight do not give rise to liability under the Fourteenth Amendment, redressible by an action under § 1983." *Lewis*, 523 U.S. 833, 854 (1998). The Third Circuit has applied *Lewis* to hold that Officers "faced with lawless behavior—the flight from their investigation—for which they were not to blame" act with the "intent . . . to do their job as law enforcement officers, not to cause injury." *Davis v. Twp. of Hillside*, 190 F.3d 167, 171 (3d Cir. 1999).

Plaintiff claims that she has pleaded "sufficient facts" to establish the Officers' liability under the *Lewis* standard, pointing to the paragraph in her FAC which states that the Officers' actions were "outrageous, egregious, and conscience-shocking, and rise to a level of intention to cause harm." FAC ¶ 53. But assertions in a FAC that are "no more than conclusions" are "not entitled to the assumption of truth." *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 787, 790 (3d Cir. 2016) (stating that "the clearest indication that an allegation is conclusory and unworthy of weight in analyzing the sufficiency of a complaint is that it embodies a legal point."); *see also Burch v. Milberg Factors, Inc.*, 662 F.3d 212, 224 (3d Cir. 2011) ("Mere restatements of the elements of a claim are not entitled to the assumption of truth." (citations omitted)).

Rather, the specific facts alleged in Plaintiff's FAC belie any claim that the Officers acted with an intent to harm her: (1) the fleeing suspect, and not the Officers, caused the car collision which led to Plaintiff's injuries; and (2) the Officers did not even discover that Plaintiff had been hurt during the course of their pursuit until they returned

3

to vehicles with the suspect apprehended. FAC ¶¶ 19-21. Moreover, *Lewis* "squarely refutes" the contention that the Officers' alleged "violation of police department regulations, which might be probative of recklessness or conscious disregard of plaintiff's safety, suffices to meet the [intent to harm standard]." *Davis*, 190 F.3d at 170. Because Plaintiff has "presented no evidence" that the Officers acted with an intent to harm her, this claim must be dismissed. *Fitzgerald v. Bellmawr Borough*, No. 05-1264, 2007 WL 2687456, at *8 (D.N.J. Sept. 6, 2007) (dismissing Complaint where Plaintiff failed to present any evidence that pursuing Officer acted with an intent to harm).

In the alternative, Plaintiff argues that the *Lewis* "intent to cause harm" rule does not apply here because the situation was a "low-priority traffic violation" that did not call for "fast action." ECF 38-1, 8-9. Not so. The Officers were faced with a driver who had a stop notice in effect for his vehicle and was fleeing the police. This is just the sort of "hyper pressurized environment" where the Third Circuit has dictated that the "intent to harm" standard should apply. *See Sanford v. Stiles,* 456 F.3d 298, 309 (3d Cir. 2006). Accordingly, this Count is dismissed.[2]

### ii. Count Three (Willful Misconduct Under the TCA)

In Count Three, Plaintiff alleges that the Officers willfully undertook a high-speed chase in a residential neighborhood in violation of the AG Guidelines. Dismissal of this claim is not warranted.

The TCA confers absolute immunity upon police officers "except where the police officer engages in willful misconduct." *Tice v. Cramer*, 133 N.J. 347, 356 (1993). Willful misconduct in the context of a police vehicular chase has two elements: (1) disobeying either a specific lawful command of a superior or a specific lawful standing order; and (2) knowing of the command or standing order, knowing that it is being violated, and intending to violate it. *Fielder v. Stonack*, 141 N.J. 101, 125-26 (1995). Where application of a rule distinguishing permissible and impermissible conduct is dependent upon the officer's reasonable belief in a threat of danger, "a mere error in judgment" does not suffice to constitute willful misconduct. *Id.* at 125 n.5.

Here, the relevant standing order, the AG Guidelines, states that an officer may "only pursue a vehicle when the officer reasonably believes that the violator has committed an offense of the first or second degree or a select enumerated offense or when a police officer reasonably believes that the violator poses an immediate threat to the safety of the public or other police officers." FAC, Ex. 2. Pursuant to those Guidelines, even if an officer "reasonably believes that a violator has committed the requisite offense and/or poses an immediate threat to public safety, an officer must

---

[2] Because the Court finds that Plaintiff has failed to state claim for a due process violation, the Court need not address the Officers' qualified immunity argument.

consider the degree of risk created by the pursuant before determining whether to undertake that pursuit." FAC ¶ 26.

Taking as true the factual assertions in Plaintiff's FAC, the Court finds that Plaintiff has stated a claim for willful misconduct under the TCA. *Evancho,* 423 F.3d at 350. According to the FAC, the Officers attempted to contact radio dispatch to ascertain the reason for the stop notice but, due to radio traffic, could not reach the dispatchers. FAC ¶ 17. Therefore, the Officers may not have had a reasonable belief that Young had "committed an offense of the first or second degree or a select enumerated offense." *Id.*, Ex. 2. Nonetheless, the Officers pursued Young at a high rate of speed for nearly a mile. *Id.* ¶ 18.

Even assuming that the Officers reasonably believed that Young "pose[d] an immediate threat to the safety of the public or other police officers," as the AG Guidelines require, the Court is not in the position at this stage to assess the Officers considered "the degree of risk created by the pursuant before determining whether to undertake that pursuit." *Id.* Ex. 2. *See Gaymon v. Esposito*, No. 11-4170, 2013 WL 4446973, at *23 (D.N.J. Aug. 16, 2013) (denying the Officer's motion to dismiss because "assessing the reasonableness of [the Officer's] actions—which requires careful attention to the particular facts and circumstances of the night in question—is not something that can properly be resolved at the pleading stage"). It is certainly plausible, as Plaintiff alleges, that the Officers, in the rush to apprehend the suspect, failed to properly consider the risk posed by Young. Moreover, the Court cannot say, one way or the other, at the pleading stage, whether the Officers knew of the AG Guidelines and purposefully violated them.

Viewing the facts in the light most favorable to Plaintiff, the Court determines that dismissal of this Count is not warranted. The Officers' motion to dismiss Count Three is therefore **DENIED**.

### iii. Count Four (Negligence under the TCA)

Because Count Four asserts a claim against the Officers under the TCA based on their allegedly negligent behavior, the Court finds that the Officers are immune from this claim. As stated above, the TCA confers absolute immunity upon police officers "except where the police officer engages in willful misconduct." *Tice*, 133 N.J. at 356; *see also Alston v. City of Camden*, 168 N.J. 170, 178 (2001) (quoting *Tice* for the principle that the policy considerations behind the TCA "support an interpretation of pursuit immunity that 'immuniz[es] both the employee and the entity for *all* acts of negligence related to the injuries caused by the escape, whether those of the employee or the entity, and whether independent or not.'").

### B. Claims Against the City

As a preliminary matter, Plaintiff concedes in her sur-reply that the City cannot be held liable for Count I and Count III of the Amended Complaint. ECF No. 25. Accordingly, these Counts are **DISMISSED with prejudice** against the City.

#### i. Count II (Failure to Train)

In Count II of her FAC, Plaintiff alleges that the City is liable under *Monell v. Dep't of Soc. Serv.* for negligent training of officers and promulgating improper policies or customs. *See Monell,* 436 U.S. 658 (1971). The Court finds that Plaintiff has failed to state a claim for *Monell* liability against the City.

A "municipality cannot be held liable under § 1983 on a *respondeat superior* theory" for the actions of an officer, but a municipality can be held liable for unconstitutionally implementing or enforcing "a policy statement, ordinance, regulation, or decision officially adopted and promulgated by" the officers of that municipality that violated a plaintiff's rights. *Id.* at 690. A plaintiff challenging a policy under *Monell* must "identify the challenged policy, attribute it to the city itself, and show a causal link between execution of the policy and the injury suffered." *Losch v. Borough of Parkesburg, Pa.,* 736 F.2d 903, 910 (3d Cir.1984) (citation omitted).

A municipality can also be held liable under § 1983 and *Monell* for its failure to train police officers adequately if that failure "amounts to deliberate indifference to the rights of persons with whom the police come into contact." *City of Canton v. Harris,* 489 U.S. 378, 388 (1989). "Ordinarily, a pattern of similar constitutional violations by untrained employees is necessary to demonstrate deliberate indifference for purposes of failure to train." *Thomas v. Cumberland Cty.,* 749 F.3d 217, 223 (3d Cir. 2014) (quoting *Connick v. Thompson,* 563 U.S. 31, 62 (2011)). To establish liability based on a single incident, a plaintiff must demonstrate that the "need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policy makers of the City can reasonably be said to have been deliberately indifferent to the need." *Canton,* 489 U.S. at 390.

In her FAC, Plaintiff alleges that the Officers' conduct "demonstrates that Defendant, City of Newark failed to properly train, and/or failed to have a proper policy regarding training, police officers on the appropriate and justifiable use of police pursuits; the appropriate and justifiable use of high speed chases; and the risk posed by police pursuits and high speed chases to pedestrians and innocent bystanders." FAC ¶ 57. She further alleges that the Officers' conduct "indicates that Defendant, City of Newark had inappropriate policies, procedures, customs and practices" with respect to these practices. *Id.* ¶ 60.

Plaintiff's allegations are insufficient to establish a claim against the City under *Monell*. Insofar as Plaintiff argues that the City failed to properly train its police officers, she relies upon a single incident theory of liability. But the Officers' actions in this case do not suggest that the City was deliberately indifferent to the need for more training. Rather, Plaintiff has merely presented evidence of the shortcomings of individual police officers who appear to have improperly administered an otherwise sound training program. *See Simmons v. City of Philadelphia,* 947 F.2d 1042, 1060 (3d Cir. 1991) ("[D]eliberately indifferent failure to train is *not* established by (1) presenting evidence of the shortcomings of an individual; (2) proving that an otherwise sound training program was negligently administered; or (3) showing, without more, that better training would have enabled an officer to avoid the injury-causing conduct." (emphasis in original)).

To the extent that Plaintiff alleges that the City promulgated an improper policy, this claim, too, fails. First, Plaintiff has failed to identify any specific policy promulgated by the City that is improper. *See Losch,* 736 F.2d at 910; *McTernan v. City of York, PA*, 564 F.3d 636, 658 (3d Cir. 2009) ("To satisfy the pleading standard, [Plaintiff] must identify a custom or policy, and specify what exactly that custom or policy was."). The only policy identified in the FAC is the AG Guidelines, and Plaintiff has alleged that the Officers violated her rights by failing to follow those Guidelines, indicating that these Guidelines are proper. A blanket recitation of the elements of a *Monell* claim cannot, by itself, establish that claim. *See Wood v. Williams*, 568 F. App'x 100, 104 (3d Cir. 2014) ("Simply paraphrasing § 1983 does not meet Rule 8's pleading requirements because it fails to satisfy the rigorous standards of culpability and causation required to state a claim for municipal liability." (internal citations and alterations omitted)).

Accordingly, Count Two is **DISMISSED** against the City.

### ii. Count IV (Negligence Under the TCA)

In her sur-reply, Plaintiff concedes that the City cannot be held vicariously liable for the police officers' negligence, but contends that the City can be held liable for the police dispatchers' negligence. The Court can find no support for this contention, and Plaintiff has failed to offer any. Instead, Plaintiff simply reiterates the text of the TCA, which states that "neither a public entity nor a *public employee* is liable for . . . any injury caused by a person resisting arrest or evading arrest." ECF doc. 25 (citing N.J.S.A.§ 59:5-2) (emphasis added). The text of the statute does not indicate that police dispatchers are excluded from the definition of "public employees" and the Court cannot find any case law indicating that this is so. Accordingly, Count IV is **DISMISSED** against the City.

### IV. CONCLUSION

For the reasons stated above, the City's motion to dismiss is **GRANTED**. The Officers' motion to dismiss is **GRANTED in part and DENIED in part**, insofar as

insofar as Counts One and Four of the Complaint are **DISMISSED** as to the Officers, but Count Three may proceed**.**  An appropriate order follows.

/s/ William J. Martini
**WILLIAM J. MARTINI, U.S.D.J.**

Date: **February 28, 2017**