UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| IVAN MENDELSON, as guardian of the person and property of Joan Mendelson, an incapacitated person,<br><br>Plaintiff,<br><br>v.<br><br>P.O. JOEL REYES, *et al.*,<br><br>Defendants. | Civ. No. 2:16-cv-04831 (WJM)<br><br>OPINION |

**WILLIAM J. MARTINI, U.S.D.J.:**

This matter arises out of a police pursuit during which the fleeing vehicle struck and severely injured a pedestrian, Joan Mendelson ("Ms. Mendelson"). Plaintiff Ivan Mendelson, as guardian of Ms. Mendelson, filed this action against two individual Newark police officers, Joel Reyes ("Officer Reyes") and Ricardo Feliciano ("Officer Feliciano"), and the City of Newark.[1] Defendants Officer Reyes and Officer Feliciano now move, in separate motions, for summary judgment on Count Three of Plaintiff's First Amended Complaint, the sole remaining claim in this case. The Court did not hear oral argument. Fed. R. Civ. P. 78(b). For the reasons set forth below, the Officers' motions are **GRANTED**.

I.  **BACKGROUND**[2]

A. **The Pursuit**

On August 27, 2015, at approximately 11:40 a.m., Officer Joel Reyes, while on duty in a marked police car, observed in his vehicle's rear-view or left-side mirror a Nissan

---

[1] For purposes of clarity, the Court will refer to Ms. Mendelson either by her name or as "Plaintiff." Ms. Mendelson passed away in 2020 during the pendency of this litigation. Am. Suggestion of Death, ECF No. 110. By way of Text Order on August 6, 2020, the Court deferred Ivan Mendelson's obligation to move to substitute the proper party under Federal Rule of Civil Procedure 25(a) until after the Court resolved the present motions. ECF No. 117.

[2] The Court will cite to the record using the following abbreviations: Officer Reyes's Statement of Undisputed Material Facts, "RSOF"; Officer Feliciano's Statement of Undisputed Material Facts, "FSOF"; Plaintiff's Response to Officer Reyes's Statement of Undisputed Material Facts, "PRRSOF"; and Plaintiff's Response to Officer Feliciano's Statement of Undisputed Material Facts, "PRFSOF."

1

Sentra approach and drive past him without slowing down for a nearby speed bump. RSOF ¶ 1, ECF No. 105-3; PRRSOF ¶ 1, ECF No. 112-1; Harriott Cert., Ex. A at 26:17-27:19, ECF No. 106. While Officer Reyes could not discern the Nissan's exact speed, he testified that he could hear the vehicle's engine racing as it approached and passed him "at a high rate of speed." RSOF ¶¶ 1-2, ECF No. 105-3; PRRSOF ¶ 1, ECF No. 112-1. Officer Reyes followed the vehicle to identify the vehicle's license plate number. RSOF ¶ 3, ECF No. 105-3. When he entered the vehicle's license plate into his mobile computer, it registered a "hit," indicating that a stop notice was in effect for the vehicle. *Id.* ¶ 4. Before clicking the next screen on his mobile computer for information about the "hit," Officer Reyes radioed dispatch, provided the dispatcher with the license plate number, and advised that he was going to pull the vehicle over. *Id.* ¶ 5; PRRSOF ¶ 6, ECF No. 112-1. He then activated his lights and sirens to initiate a car stop. RSOF ¶ 8, ECF No. 105-3. The driver of the Nissan Sentra, later identified as Nathaniel Young ("Young"), sped away. *Id.* ¶ 9. Officer Reyes determined that Young was committing the second-degree offense of eluding, so he pursued Young's vehicle down several streets at varying speeds averaging 29.4 miles per hour. Harriott Cert., Ex. A at 11:17-11:19, ECF No. 106; Harriott Cert., Ex. G at 12, ECF No. 106.

Officer Reyes testified that once Young fled, he could not pay attention to his mobile computer and to pursuing Young at the same time, and thus never proceeded to the next screen on his computer to identify the reason for the stop notice. Harriott Cert., Ex. A at 15:16-15:20, ECF No. 106. Instead, Officer Reyes continued to provide dispatch with the vehicle's license plate number to ascertain the reason for the stop notice and to notify them the vehicle was fleeing, but radio interference hindered dispatch's ability to hear the plate number and provide Officer Reyes with the requested information. *Id.* at 11:11-11:16.

Officer Feliciano, also operating a marked police car and on regular patrol duty in the area, testified that he heard sirens in close proximity and witnessed a vehicle run a stop sign as the vehicle was fleeing from a pursuing police cruiser. FSOF ¶¶ 1-3, ECF No. 107-3. Officer Feliciano adjusted his radio from his district's channel to the neighboring district's channel and heard Officer Reyes informing dispatch as to the direction of the eluding vehicle. *Id.* ¶¶ 5-6, 25. Upon encountering the eluding vehicle at an intersection, Officer Feliciano joined the pursuit and became the primary unit ahead of Officer Reyes. *Id.* ¶¶ 27-29. At the time Officer Feliciano initiated the pursuit, his vehicle's lights and sirens were on and he notified dispatch on his district's channel that a pursuit was ongoing. *Id.* ¶¶ 30-32. Officer Feliciano attempted to ascertain from dispatch the initial reason for Officer Reyes's pursuit of the vehicle and whether the pursuit should continue. *Id.* ¶ 42.

Approximately thirty-two seconds after Officer Feliciano joined the pursuit, and before dispatch could provide Officer Feliciano with details on the fleeing vehicle, Young ran a red light at an intersection and collided with an oncoming civilian vehicle. *Id.* at ¶¶ 46-51. Young exited his vehicle and fled on foot until the Officers apprehended him. *Id.* ¶¶ 56-58. Upon returning to their vehicles with Young, the Officers discovered that

Young's vehicle had struck and severely injured a pedestrian, Ms. Mendelson. *Id.* ¶ 59; Harriott Cert., Ex. A at 13:2-13:11, ECF No. 106. The entire pursuit lasted less than two minutes. Harriott Cert., Ex. G at 12, ECF No. 106. It was not until after the Officers apprehended Young that Officer Reyes learned the stop notice on Young's vehicle was for a suspended vehicle registration. Harriott Cert., Ex. A at 64:15-64:23, ECF No. 106.

### B. The Vehicular Pursuit Policies

At the time of the pursuit, both the New Jersey Attorney General's Office and the Newark Police Department had similar pursuit policies establishing guidelines for the initiation and continuation of vehicular pursuits of fleeing suspects. Harriott Cert., Exs. F, G, ECF No. 106. Officer Reyes and Officer Feliciano were aware of these policies and received training on them twice a year. RSOF ¶ 14, ECF No. 105-3; FSOF ¶¶ 61-63, ECF No. 107-3.

Under both pursuit policies, "[a] police officer has the authority to attempt the stop of any person suspected of having committed any criminal offense or traffic violation." Harriott Cert., Ex. B at 5, ECF No. 106; Harriott Cert., Ex. C at 1, ECF No. 106. While it is the violator who initiates the pursuit, a police officer may only pursue the violator under two circumstances: (1) "when the officer reasonably believes that the violator has committed an offense of the first or second degree" or (2) "when a police officer reasonably believes that the violator poses an immediate threat to the safety of the public or other police officers." Harriott Cert., Ex. B at 5, ECF No. 106. Pursuits for motor vehicle offenses are not authorized "unless the violator's vehicle is being operated so as to pose an immediate threat to the safety of another person." *Id.*

Even where a pursuit is authorized, "a pursuit should not be automatically undertaken." *Id.* Both pursuit policies require a police officer to "weigh the need for immediate apprehension against the risk created by the pursuit." *Id.*; Harriott Cert., Ex. C at 1, ECF No. 106. Specifically, the pursuit policies state that an officer must consider the following factors prior to initiating the pursuit: (1) the likelihood of successful apprehension; (2) whether the identity of the violator makes later apprehension possible; (3) the degree of risk created by pursuit (vehicular traffic, nature of the area, pedestrian traffic, environmental factors, and road conditions); and (4) the officer's driving skills, familiarity with roads, and police vehicle. Harriott Cert., Ex. B at 5-6, ECF No. 106; Harriott Cert., Ex. C at 1-2, ECF No. 106.

Following the incident here, the Essex County Prosecutor's Office and the Newark Police Department's Office of Professional Standards conducted investigations into the pursuit and whether the Officers had violated the above procedures. Harriott Cert., Exs. F, G, ECF No. 106. Both Offices determined that there was no evidence to suggest violations of the pursuit policies. *Id.*

### II. PROCEDURAL HISTORY

Based on the facts above, Ms. Mendelson's guardian filed the Complaint in this action on her behalf, later amending it to bring the following four Counts: (1) Officers Reyes and Feliciano violated Ms. Mendelson's Fourteenth Amendment due process rights (Count One); (2) the City of Newark failed to properly train, or have a proper policy regarding training of, police officers and police dispatchers (Count Two); (3) the Officers' willful misconduct renders them liable under the New Jersey Tort Claims Act ("TCA") (Count Three); and (4) the Defendants' negligent conduct renders them liable under the TCA (Count Four). Am. Compl. ¶¶ 39-74, ECF No. 15.

By way of Order and Opinion dated February 28, 2017, resolving Defendants' motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court dismissed the First Amended Complaint as to the City of Newark and dismissed Counts One and Four as to the Officers. ECF Nos. 46, 47. The Court permitted Count Three—the claim that the Officers' willful misconduct renders them liable under the TCA—to proceed.[3] *Id.* The Officers now move for summary judgment on Count Three, the sole remaining claim against them in Plaintiff's First Amended Complaint. ECF Nos. 105, 107. The motions are fully briefed and ripe for resolution.

### III.  LEGAL STANDARD

Federal Rule of Civil Procedure 56 provides for summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Turner v. Schering-Plough Corp.*, 901 F.2d 335, 340 (3d Cir. 1990). A factual dispute is genuine if a reasonable jury could find for the non-moving party, and is material if it will affect the outcome of the trial under governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court considers all

---

[3] In dismissing the claims over which the Court had original jurisdiction and allowing the TCA claim against the Officers to proceed, the Court opted to exercise supplemental jurisdiction over Count Three pursuant to 28 U.S.C. § 1367(c), though it did not expressly cite to the statute. The United States Court of Appeals for the Third Circuit "recognize[s] that, 'where the claim over which the district court has original jurisdiction is dismissed before trial, the district court *must* decline to decide the pendent state claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so.'" *Hedges v. Musco*, 204 F.3d 109, 123 (3d Cir. 2000) (quoting *Borough of West Mifflin v. Lancaster*, 45 F.3d 780, 788 (3d Cir.1995)) (emphasis in original). At this stage of the litigation, where the case has been pending before this Court for four years, and where the Court dismissed the claims over which it had original jurisdiction three and a half years ago, and where the parties have since spent that time engaged in discovery on Count Three and participating in settlement conferences before the Honorable Mark Falk, U.S.C.M.J., the Court finds that it would be inefficient, inconvenient, and unfair to the litigants to now remand this matter to state court.

evidence and inferences drawn therefrom in the light most favorable to the non-moving party. *Andreoli v. Gates*, 482 F.3d 641, 647 (3d Cir. 2007).

Initially, the moving party has the burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp.*, 477 U.S. at 323. Once the moving party has met this burden, the nonmoving party must identify, by affidavits or otherwise, specific facts showing that there is a genuine issue for trial. *Id.* The opposing party must do more than just rest upon mere allegations, general denials, or vague statements. *Saldana v. Kmart Corp.*, 260 F.3d 228, 232 (3d Cir. 2001). Rather, to withstand a proper motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party. *Anderson*, 477 U.S. at 256-57.

## IV. DISCUSSION

Count Three alleges that the Officers are liable under the TCA for willfully undertaking a high-speed chase of Young's vehicle in violation of the pursuit policies. The TCA confers absolute immunity upon police officers "except where the police officer engages in willful misconduct." *Tice v. Cramer*, 133 N.J. 347, 356 (1993).

In their separate motions for summary judgment, the Officers argue that they pursued Young's vehicle in compliance with the pursuit policies and that they are entitled to absolute immunity under the TCA. *See* Reyes Br., ECF No. 105-2; Feliciano Br., ECF No. 107-1. In opposition to each motion, Plaintiff argues that the Officers automatically undertook the pursuit without first considering the risk factors enumerated in the pursuit policies, thereby knowingly violating the policies. *See* Pl. Opp'n Br., ECF No. 112; Pl. Opp'n Br., ECF No. 113. Plaintiff argues that there is thus a genuine issue of fact as to whether the Officers engaged in willful misconduct.

In the context of a police vehicular pursuit, willful misconduct has two elements: (1) disobeying either a specific lawful command of a superior or a specific lawful standing order; and (2) knowing of the command or standing order, knowing that it is being violated, and intending to violate it. *Fielder v. Stonack*, 141 N.J. 101, 125-26 (1995). The general maxim is where a rule or policy leaves no discretion to an officer, a knowing violation of the rule or policy would constitute willful misconduct. *Chunkoo v. City of Newark Police Dep't*, No. A-4286-16T3, 2019 WL 1501548, at *5 (N.J. Super. Ct. App. Div. Apr. 4, 2019), cert. denied, 238 N.J. 590 (2019), and cert. denied, 238 N.J. 601 (2019). Conversely, "where officers are allowed decision-making discretion, the law will grant them substantial leeway and immunity." *Id.*

Here, the Attorney General's Pursuit Policy constitutes the relevant standing order. *See id.* The Policy gave Officer Reyes and Officer Feliciano discretion to pursue Young's vehicle if they reasonably believed Young was committing the second-degree offense of eluding or Young posed an immediate threat to public safety. *See id.* ("We recognize that

the officers cannot be found to have committed willful misconduct in initiating the pursuit."). The record reflects the Officers appropriately exercised that discretion.

It is also clear that the Policy imposed a non-discretionary duty on the Officers to consider multiple risk factors (likelihood of successful apprehension, identity of the violator, degree of risk created by pursuit, the officer's characteristics) before engaging in the pursuit. *See id.* ("The policies state unqualifiedly that the officers 'must' do so."). The critical issue, therefore, hinges not on whether the Officers undertook a satisfactory analysis of these factors, but whether the Officers chose to undertake the analysis at all before they pursued Young's vehicle.

As to Officer Reyes, Plaintiff has not raised a genuine issue of fact as to whether he undertook a risk analysis before engaging in the pursuit. Officer Reyes was familiar with the Attorney General's Pursuit Policy and received training on it twice a year. He knew of the Policy's provision requiring him to conduct a risk analysis. Plaintiff makes much of the fact that when Officer Reyes was asked at his deposition whether he automatically decided to pursue Young once he observed Young eluding, Officer Reyes answered, "Yes." Harriott Cert., Ex. A at 22:13-22:21, ECF No. 106. When asked whether he believed he went through the thought process of conducting a risk analysis before pursuing Young, Officer Reyes answered, "No. At the time, no. . . . I was just focused on . . . the pursuit and the apprehension." *Id.* at 24:15-24:25. While Officer Reyes's deposition testimony may not be consistent with the Pursuit Policy's requirements, the record reflects that Officer Reyes's conduct at the time of the pursuit was consistent with those requirements.

The record reflects Officer Reyes considered the degree of risk created by the pursuit, which began only after Officer Reyes attempted to stop Young's vehicle. Young did not stop, but sped away and engaged in eluding Officer Reyes. Officer Reyes testified that at the time of the pursuit there was some traffic, no children were outside because school was not out, and he was travelling at a speed that "was not one to cause concern" and that was considerate of the amount of traffic. *Id.* at 22:25-23:17. He was driving a marked police car equipped with both sirens and overhead lights. He testified that if he thought the pursuit posed a safety risk to himself or pedestrians, he could have terminated the pursuit. *Id.* at 23:18-23:23. Additionally, he testified that had he known the stop notice on Young's vehicle was for a suspended vehicle registration, he would not have pursued or continued to pursue Young because the safety risk involved in pursuing for a suspended registration would have been unwarranted. *Id.* at 61:15-62:11, 64:3-64:6. In the Police Pursuit Report that Officer Reyes completed after the incident, Officer Reyes marked the boxes indicating road conditions were dry, traffic was light, and weather was clear at the time of the pursuit. Harriott Cert., Ex. E, ECF No. 106.

Considering the foregoing evidence and inferences drawn therefrom in the light most favorable to Plaintiff, the Court finds a genuine issue of fact does not exist as to Officer Reyes's conduct. Police pursuits are inherently dangerous, unpredictable situations in which police officers must make critical, split-second decisions to ensure those whom

6

the law has determined be apprehended are apprehended without injury to other drivers, passengers, bystanders, or pedestrians. The record reflects Officer Reyes made such split-second decisions in accordance with the pursuit policies. Absent an inference of willful misconduct, he is entitled to absolute immunity under the TCA. The Court will grant Officer Reyes's motion for summary judgment.

As to Officer Feliciano, Plaintiff has not raised a genuine issue of fact as to whether Officer Feliciano engaged in willful misconduct when he joined the pursuit of Young's vehicle. Officer Feliciano was familiar with the Attorney General's Pursuit Policy and received training on it twice a year. Although he answered "yes" when asked at his deposition whether he automatically joined the pursuit of Young's vehicle after observing Young run a stop sign at an intersection while fleeing, Officer Feliciano's testimony as to his actual conduct demonstrates otherwise. Afanador Cert., Ex. A at 61:19-61:22, ECF No. 107-2. Officer Feliciano testified that at the time he decided to join the pursuit, he assessed the risk by considering the time of day, the volume of vehicle and pedestrian traffic, the weather, and the condition of his police vehicle, a marked unit with sirens and overhead lights. *Id.* at 45:16-46:20, 46:16-48:11, 97:10-97:12. He testified further that when he undertook the pursuit, he was not driving at an excessive speed and he continued to communicate with dispatch to ascertain more information on the eluding vehicle. *Id.* at 48:12-48:14, 48:23-49:24.

Considering the foregoing evidence and inferences drawn therefrom in the light most favorable to Plaintiff, the Court finds that a genuine issue of fact does not exist as to Officer Feliciano's conduct. Absent an inference of willful misconduct, he is entitled to absolute immunity under the TCA. The Court will grant Officer Feliciano's motion for summary judgment.

## V. CONCLUSION

For the reasons stated above, the Officers' separate motions for summary judgment, ECF Nos. 105, 107, are **GRANTED**. Count Three of Plaintiff's First Amended Complaint, the sole remaining claim against them, is **DISMISSED** with prejudice. The Officers' Third-Party Complaints against Nathaniel Ernest Young, Jr., for indemnification and contribution, ECF Nos. 56, 66, are **DISMISSED** as moot.

An appropriate Order follows.

WILLIAM J. MARTINI, U.S.D.J.

**Date: October 21, 2020**

7